# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| TIMOTHY DWAYNE DENNISON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11CV00086 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | By: James P. Jones |
| COMMISSIONER OF | ) | United States District Judge |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff. Nora Koch, Acting Regional Chief Counsel, Region III, and Robert W. Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Timothy Dwayne Dennison filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433 (West 2011); 42 U.S.C.A. §§ 1381-1383d (West 2012). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Dennison filed for benefits on September 9, 2008, alleging that he became disabled on May 15, 2008. His claim was denied initially and upon reconsideration. Dennison received a hearing before an administrative law judge ("ALJ"), during which Dennison, represented by counsel, and a vocational expert testified. The ALJ denied Dennison's claim, and the Social Security Administration Appeals Council denied his Request for Reconsideration. Dennison then filed his Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, which have been briefed and argued. The case is ripe for decision.

II

Dennison was born on July 2, 1966, making him a younger person under the regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c) (2012). Dennison has a ninth grade education and has worked in the past as an assembler for a trailer manufacturer, a furniture assembly sprayer, and a laborer in a brick factory. He originally claimed he was disabled due to degenerative disc disease, arthritis, tendonitis, and gout.

Dennison sought treatment with Deborah Weddington, M.D., a family practitioner, from January 2005 through April 2008. During this time period,

Dennison complained of gout, arthritis, high blood pressure, knee pain, back pain, neck pain, right shoulder pain, depression, and anxiety. He was prescribed medications such as Lortab, Percocet, Indocin, Flexeril, Lisinopril, and Norvasc. Dr. Weddington repeatedly encouraged Dennison to watch his diet and to exercise more frequently. (R. at 230, 233-34, 248, 268.) The record reflects that Dennison told Dr. Weddington during several office visits that he experienced only moderate pain when taking his medications. (R. at 229, 264-65, 269-70.) In April 2008, Dr. Weddington noted that Dennison was scheduled to be laid off from his job "soon." (R. at 270.)

In May 2006, a series of X rays were performed at Smyth County Community Hospital. An X ray of the right shoulder was normal. X rays of the cervical spine revealed C5-6 degenerative changes with disc space narrowing, sclerosis, and osteophytes, and mild foraminal encroachment at C5-6. In June 2006, an MRI of the lumbar spine showed slight left foraminal narrowing, mild ventral extradural defect at L1-2 without any demonstrated focal lesion or canal stenosis, small Schmorl's nodes in the lower thoracic levels, and mild degenerative changes and disc space narrowing at L2-3 and L3-4.

Dennison presented to the emergency room on May 15, 2008, with complaints of a right ankle injury. X rays showed soft tissue swelling, but no

-3-

evidence of fracture or dislocation. (R. at 281.) Dennison was prescribed Lortab and placed in a posterior splint. (R. at 343-45.)

On May 21, 2008, Dennison sought treatment with Christy M. McGhee, MSN, FNP, at Abingdon Orthopedic Associates.[1] Upon examination, Dennison's right ankle was moderately swollen, and he reported tenderness over the lateral malleoli and medial malleous. McGhee provided Dennison with a moonboot and prescribed Ibuprofen and Vicodin.

Dennison returned to McGhee for follow-up examinations from June 2008 through August 2008. During this time period, Dennison declined a suggested injection into his ankle joint, as well as an offer to be placed in a short leg cast for a few weeks. He began physical therapy, but discontinued treatment after only three sessions due to cost concerns. In June 2008, an MRI of the right ankle revealed contusions and a small amount of fluid in the sheath of the posterior tibial tendon, but no occult fractures or ligament tears. (R. at 280.) In August 2008, Dennison reported overall improvement of his right ankle, but stated that he continued to have some soreness. (R. at 275.)

In October 2008, Dr. Weddington opined that Dennison was "unable to work due to multiple medical problems." (R. at 283.) Dr. Weddington's opinion was

---

[1] McGhee's supervising physician was Melvin Heiman, M.D..

not accompanied by any explanatory report, and she had not treated Dennison since August 2008.

William Humphries, M.D., a state agency physician, reviewed Dennison's medical records in January 2009. He diagnosed Dennison with hypertension; chronic lumbar strain; gouty arthritis; mild degenerative joint disease in both hands and feet; tendonitis in both shoulders, right being worse than left; chronic cervical strain; and moderate venous insufficiency in the right lower extremity. Dr. Humphries opined that Dennison was capable of performing a range of light work. Two other state agency physicians, Robert McGuffin, M.D., and Frank Johnson, M.D., also reviewed Dennison's medical records and reported similar findings.

In February 2009, Dennison returned to Dr. Weddington with complaints of general pain. Dr. Weddington's evaluation was largely unremarkable. Dennison was alert, oriented, lethargic, and in no acute distress. (R .at 307.)

Dr. Weddington completed an assessment of Dennison's physical ability to do work-related activities in April 2009. Dr. Weddington indicated that Dennison would have significant occupational limitations. She also opined that Dennison experienced incapacitating pain, and that his medications rendered him unable to function at a productive level. (R. at 312.) However, Dr. Weddington provided no explanation for her findings.

Dennison sought treatment from Uzoma Obuekwe, M.D., from November 2009 through May 2011.  During this time period, Dennison complained of constant pain from his neck down to his legs, gout in his left ankle, right shoulder pain, and high blood pressure.  Dr. Obuekwe prescribed medications such as Lortab, Ibuprofen, Lisinopril, Flexeril, and Norvasc.  Dr. Obuekwe repeatedly noted normal orientation, memory, mood, affect, insight, and judgment; normal station and gait; normal sinus rhythm; elevated blood pressure; and decreased range of motion in the lumbosacral spine.  In September 2010, X rays of the right shoulder showed degenerative changes that had progressed since May 2006, but normal joint alignment and no indication of fracture or deformity.  (R. at 389.)

In March 2010, Dr. Obuekwe completed a form entitled "Patient Injury and Work Status," on which he indicated that Dennison was unable to work "at this time" but should be able to return to work within six months, provided he was limited to lifting no more than twenty pounds.  (R. at 391.)

At the administrative hearing held in November 2010, Dennison testified on his own behalf.  Dennison claimed that he stopped working because he "got to hurtin' so bad [he] couldn't stand to do it no more."  (R. at 28.)  He stated that he was unable to do any housework and spent most of the day watching television and

talking to his daughter.[2] Annmarie Cash, a vocational expert, also testified. She classified Dennison's past work as an assembler as heavy, semi-skilled; his past work as a furniture assembly sprayer as medium, semi-skilled; and his past work as a laborer in a brick factory as medium, unskilled.

After reviewing all of Dennison's records and taking into consideration the testimony at the hearing, the ALJ determined that he had severe impairments of degenerative disc disease, low back pain, mild degenerative joint disease of both hands and feet, tendonitis in the shoulders right worse than left, arthritis, and gout, but that none of these conditions, either alone or in combination, met or medically equaled a listed impairment.

Taking into account Dennison's limitations, the ALJ determined that Dennison retained the residual functional capacity to perform sedentary work subject to some additional limitations. The ALJ stated that Dennison could occasionally climb ramps and stairs, but not ladders, ropes, or scaffolds. He could occasionally balance, crouch, stoop, crawl, and kneel. The ALJ stated that Dennison should avoid reaching overhead or repetitive gripping, grasping, pushing, or pulling with the right upper extremity, and that he should avoid hazards

---

[2] When Dennison completed a Function Report in October 2008, he claimed much fewer limitations in his activities and capabilities. For instance, he reported that he drove, did laundry, mowed the yard, performed light cleaning, exercised for about thirty minutes each day, shopped in stores for groceries, prepared simple meals, spent time socializing with his neighbors or other people on a regular basis, and could pay attention as long as necessary. (R. at 171-78.)

-7-

such as moving machinery and unprotected heights. The vocational expert testified that someone with Dennison's residual functional capacity could work as a general office clerk, a corporate and order clerk, or an office receipt and information clerk. The vocational expert testified that those positions existed in significant numbers in the national economy. Relying on this testimony, the ALJ concluded that Dennison was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

Dennison argues that the ALJ's decision is not supported by substantial evidence because the ALJ improperly accorded "great weight" to the opinions of the state agency physicians, and failed to consider the combined effects of his impairments. For the reasons below, I disagree.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In assessing DIB and SSI claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th

Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1956-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Dennison argues that the ALJ's decision is not supported by substantial evidence. He presents two arguments.

First, Dennison argues that the ALJ improperly accorded "great weight" to the opinions of the state agency physicians, Dr. McGuffin and Dr. Johnson. Instead, Dennison contends that the ALJ should have given more weight to the medical opinions of his treating physicians, Dr. Weddington and Dr. Obuekwe.

In weighing medical opinions, the ALJ must consider factors such as the examining relationship, the treatment relationship, the supportability of the opinion, and the consistency of the opinion with the record. 20 C.F.R. §§ 404.1527(d), 416.927(d) (2012). Although treatment relationship is a significant factor, the ALJ is entitled to afford a treating source opinion "significantly less weight" where it is not supported by the record. *Craig*, 76 F.3d at 590.

In the present case, the ALJ considered the opinions of Dr. Weddington and Dr. Obuekwe, but gave little weight to their assessments, for several reasons. First, Dr. Weddington's and Dr. Obuekwe's statements that Dennison was "unable to work" are not medical opinions and are due no special significance, because they

are opinions on an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) (2012). Second, their opinions regarding Dennison's functional limitations are not well-supported by their own treatment records. For example, Dr. Weddington consistently indicated no extreme objective findings and noted that Dennison reported only moderate pain when taking his medications. (R. at 229, 264-65, 269-70.) Dr. Obuekwe similarly recorded no extreme objective findings and repeatedly indicated that Dennison's orientation, memory, affect, judgment, station, and gait were generally normal. Furthermore, Dr. Weddington's and Dr. Obuekwe's opinions are inconsistent with Dennison's conservative treatment history, as well as certain admissions that he was able to complete daily activities such as driving, doing laundry, performing light cleaning, shopping in stores for groceries, and preparing simple meals.

Moreover, the ALJ did not err by according great weight to the opinions of Dr. McGuffin and Dr. Johnson that Dennison retained the physical residual functional capacity to engage in a range of light work. Dr. McGuffin and Dr. Johnson are "highly qualified" physicians; therefore, their findings are considered valid expert opinion evidence. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (2012). Additionally, the opinions of Dr. McGuffin and Dr. Johnson are consistent with the evidentiary record as a whole. *See* 20 C.F.R. 404.1527(d)(4), 416.927(d)(4) (providing that the more consistent a medical opinion is with the

-11-

Case 1:11-cv-00086-JPJ-PMS   Document 20   Filed 08/07/12   Page 11 of 13   Pageid#: 475

record as a whole, the more weight it will generally be given). Accordingly, I find that substantial evidence supports the ALJ's weighing of the medical evidence.

Next, Dennison argues that the ALJ erred by failing to consider the combined effects of his impairments. Specifically, Dennison contends that the ALJ failed to take into account his mental impairments.

The Commissioner must consider the combined effects of all of the claimant's impairments and "not fragmentize them." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). After reviewing the ALJ's decision, I find that the ALJ properly considered the combined effects of Dennison's various ailments. The ALJ carefully examined the medical opinions of Dennison's treating physicians and state agency medical consultants before determining that Dennison had the severe impairments of degenerative disc disease, mild degenerative joint disease of the hands and feet, tendonitis in the shoulders, arthritis, and gout, as well as the nonsevere impairments of depression, anxiety, high blood pressure, and tachycardia. (R. at 15-16.) The ALJ accommodated the combined effects of these impairments by restricting Dennison, who previously performed heavy and medium work, to sedentary work with additional limitations. (R. at 14-16, 41-42.)

While it is true that the ALJ classified Dennison's depression and anxiety as nonsevere impairments, I find that this conclusion was appropriate. An impairment or combination of impairments is not severe if it does not significantly

limit a claimant's physical or mental ability to do basic work activities as defined by the regulations. 20 C.F.R. §§ 404.1521, 416.921 (2012). Although Dennison was diagnosed with depression and anxiety by his treating physicians, there are no medical records indicating any formal inpatient, outpatient, or emergency care for these impairments. Furthermore, Dennison did not describe any activities of daily living that were significantly limited by a psychiatric condition. Dr. Johnson, a state agency physician, also agreed that Dennison did not have significant mental impairments. (R. at 328.) The ALJ was required to consider the opinion of this "highly qualified" physician who is an "expert" in Social Security disability evaluations. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). Thus, I find that substantial evidence supports the ALJ's conclusion.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: August 7, 2012

/s/ James P. Jones
United States District Judge